(No. 46230.—

AMOS E. BUETTELL *et al.,* Appellees, v. DANIEL A. WALKER, Governor, *et al.,* Appellants.

*Opinion filed November 18, 1974.*

William J. Scott, Attorney General, of Chicago (Fred F. Herzog, First Assistant Attorney General, and Paul J. Bargiel, George H. Klumpner, and Robert G. Epsteen, Assistant Attorneys General, of counsel), for appellants.

Kirkland & Ellis, of Chicago (Don H. Reuben, Thomas F. Dean, Thomas F. Ging, and John W. Conniff, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

On September 11, 1973, Amos E. Buettell, Crown Industrial Products, and the Illinois State Chamber of Commerce brought this action in the circuit court of Cook County to restrain the defendants, Daniel A. Walker, Governor of the State of Illinois, and Elliot S. Epstein, Director of the Department of Finance, from enforcing Executive Order No. 5, which had been issued by the Governor on August 20, 1973. An amended complaint added Lester W. Brann, Jr., as a plaintiff. It alleged that Crown Industrial Products is an Illinois corporation engaged in the business of manufacturing and selling industrial products to the public and to various agencies of the State of Illinois; that Buettell is a citizen, resident, and taxpayer of Illinois, and the president and a director of Crown; that Brann is the president of, and a registered lobbyist for, the Illinois State Chamber of Commerce, which represents some 6,000 firms and 19,000 members located in Illinois and has itself done business with the State.

The circuit court issued a preliminary injunction from which an interlocutory appeal was taken. That appeal has been brought to this court under Rule 302(b). 50 Ill.2d R. 302.

Executive Order No. 5, "Disclosure of Political Contributions," is as follows:

"For too long the relationship between political contributions and state business has been shrouded in secrecy. The public is entitled to the assurance that the state's decisions to buy or build are made on the proper basis of price, service and quality; that decisions in regard to regulated businesses are based on the public interest.

Suppliers to the state and businesses regulated by the state, together with their key officials, should not be precluded from participating in the political process through any proper means, including political contributions where the law so permits. But, it is time to make this financial participation a matter of public

record. The certainty of public exposure will deter the making of contributions for improper purposes and assure people that government decisions are not made on the basis of political favoritism.

In today's climate, extraordinary steps are required to restore public confidence in government. It is appropriate that the powers of the Executive be used to the fullest extent possible to achieve this goal.

Accordingly, I hereby order:

1. For purposes of this Order:
   A. 'State Agency' means any executive department, commission, board, or agency whose vouchers are subject to approval by the Department of Finance; any board, commission, agency or authority which has a majority of its members appointed by the Governor; and the Governor's Office.
   B. 'Purchase Transaction' means a purchase, or a contract to purchase, goods or services of any kind by a State agency.
   C. 'Supplier' means any individual, firm, corporation, association, partnership, joint venture, sole proprietor or other business entity which is prequalified to enter, or which enters into, a 'purchase transaction' with a State agency.
   D. 'Regulated Business' means any individual, firm, corporation, association, partnership, joint venture, sole proprietor or other business entity regulated or licensed, or applying to be regulated or licensed, by the Department of Insurance, the Department of Financial Institutions, the Department of Mines and Minerals (excepting individuals or business entities regulated only under Chapter 93, Sections 143-156 (which relates to explosives) and Chapter 104, Section 63.1 (which relates to water wells)), the Commissioner of Banks and Trust Companies, the Commissioner of Savings and Loan Associations, the Illinois Liquor Control Commission, the Illinois Racing Board or the Illinois Commerce Commission.
   E. 'Key Person' means (i) any officer, director, partner, proprietor, managing agent or owner (legal or beneficial) of more than 7½ percent of any supplier or regulated business, (ii) any lobbyist representing such supplier or regulated business who is required to register under the Lobbyist Registration Act; and (iii) any other person or entity acting at the direction of any person referred to in

sub-paragraphs 1 (E) (i)-(ii).

F. 'Political Contribution' means any gifts of money, stocks, bonds, goods, property, commercial services or anything else of value to, or on behalf of:

   i) any candidate for State public office;

   ii) any elected official holding State public office;

   iii) any organization, committee, fund, party or other entity giving money, stocks, bonds, goods, property, commercial services or anything of value to, or on behalf of, any candidate for State public office.

G. 'State Public Office' means all the legislative and executive offices established under Articles IV and V of the Illinois Constitution.

2. Each individual or business entity which is or becomes a supplier or regulated business prior to September 15, 1973, shall, on or before September 15, 1973, file with the Department of Finance a Statement of Political Contributions and thereafter shall file such Statement as required by rules issued by the Department of Finance pursuant to this Order, but no less often than semi-annually. Each individual or business entity which becomes a supplier or regulated business on or after September 15, 1973, shall file a Statement of Political Contributions at, or immediately prior to, the time such individual or business entity becomes a supplier or regulated business and thereafter shall file such Statement as required by rules issued by the Department of Finance pursuant to this Order, but no less often than semi-annually. No supplier shall be eligible to enter into a purchase transaction unless such Statement has been filed in accord with this Order and the rules issued by the Department of Finance pursuant hereto.

3. The Statement of Political Contributions shall be under oath and shall include the date, amount, donor, donee, and nature of every political contribution, and the date, amount, lender, borrower, terms and extent of repayment of any loan (other than one made by a lending institution) to any individual or entity referred to in subparagraphs 1 (F) (i)-(iii) of this Order made within the 24-month period prior to the date of filing of the Statement (i) by the supplier or regulated business directly or through any trade or industry association and (ii) by any key person of that supplier or regulated business; provided, however, that any Statement required to be filed on or before September 15, 1973, shall set forth the required

information for the 24-month period prior to the effective date of this Order and for the period from the date of this Order through the date of filing.

4. The Department of Finance shall, from time to time, as may be necessary and appropriate, issue rules to implement and enforce this Order.
5. Each Statement of Political Contributions filed under this Order shall be open to reasonable public inspection in accord with rules issued by the Department of Finance pursuant hereto as to the time, place and manner of inspection.
6. This Order is effective upon filing with the Secretary of State and shall remain in full force and effect unless amended or revoked by Executive action."

Before we consider the attack upon the validity of the executive order, we must consider the standing of the plaintiffs to maintain this action. A rule issued by the Department of Finance exempts from the filing requirements of the executive order "any supplier who does less than an aggregate of $1,500 worth of business with a State agency in any fiscal year." An affidavit filed in the circuit court by the defendant Epstein states that neither Crown Industrial Products nor the Illinois State Chamber of Commerce met this minimum requirement during the fiscal year preceding the initial filing date of September 15, 1973, prescribed by the order. The executive order itself, however, as well as another rule of the Department issued at the same time, requires that any person or business entity that enters into a purchase transaction with the State after September 15 must file a statement of political contributions at the time of the transaction or immediately prior thereto. No exemption based on the dollar volume of business applies in that situation.

The question of standing need not be pursued, however, for we are satisfied that the complaint sufficiently alleges that Crown Industrial Products and its president, Buettell, are affected by the order to the degree required to entitle them to maintain this suit. Crown has done business with the State in the past, and the complaint

alleges that Crown wants and intends to do business with the State in the future. It is further alleged that both Crown and Buettell have made political contributions during the past two years to various candidates for Illinois State offices. Under the terms of the order these plaintiffs would be required to disclose the nature and extent of these contributions or else to forego any sale to the State and even the negotiation of a contract for such a sale. The order thus has an immediate impact on these two plaintiffs. Since we hold that Crown and Buettell have standing, we need not consider whether the remaining plaintiffs also have standing, nor need we consider whether the suit was properly brought as a class action.

The attack upon the validity of Executive Order No. 5 covers a broad range. It is said that the order "unconstitutionally infringes on First Amendment freedoms and the right of privacy." The basic premise of this argument is that a political contribution is a form of political association and is protected by the First Amendment. From that basic premise, the argument follows the current ritual and asserts that no compelling State interest has been demonstrated, that the order is overly broad, and that less restrictive alternatives are available. The difficulty with this argument is that its basic premise omits a critical factual ingredient which must be supplied if the premise is to be relevant to this case. That ingredient is the fact that disclosure of financial contributions is sought only from regulated businesses and from those persons who seek to sell goods or services to the State. The argument relies heavily upon the California decision in *City of Carmel-By-The-Sea v. Young* (1970), 2 Cal. 3d 259, 466 P.2d 225, 85 Cal. Rptr. 1. This court, however, has twice refused to follow that decision. *Stein v. Howlett* (1972), 52 Ill.2d 570; *Illinois State Employees Association v. Walker* (1974), 57 Ill.2d 512.

The argument also relies upon *Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct.

1678, which involved legislation relating to the use of contraceptives. Concerning a similar argument we said: "In our opinion, this argument debases the *Griswold* opinion, and we find it completely unacceptable. We do not deal in this case with the most intimate relationships of husband and wife or with an effort by the State to control their decisions as to whether and when to have their children. We deal rather with a requirement that the financial affairs of persons who are paid by the public and who occupy positions of high public trust be disclosed." (*Illinois State Employees Association v. Walker* (1974), 57 Ill.2d 512, 524.) We see no reason to conclude that the *Griswold* case is any more relevant in the present situation where disclosure is required of financial contributions to candidates for public office made by regulated businesses and persons who seek to enter into commercial relationships with the State.

Insofar as the attack upon Executive Order No. 5 is predicated upon a right of privacy under the Illinois Constitution of 1970 (see sections 6 and 12 of article I), and upon the violation of the equal protection clauses of the Federal and State constitutions, our decision in *Illinois State Employees Association v. Walker* is pertinent. In their attack upon the present executive order, the plaintiffs relied heavily upon the decision of the trial court in that case. That decision, however, was reversed by this court, and the arguments based upon the trial court's decision are not persuasive.

The case stands otherwise, however, with respect to the authority of the Governor to promulgate Executive Order No. 5. We do not agree with the defendants' contention that the order falls within the authority granted to the Governor by section 8 of article V of the Constitution, which states: "The Governor shall have the supreme executive power, and shall be responsible for the faithful execution of the laws." The purpose of the order appears to be to formulate a new legal requirement rather

than to execute an existing one. And while the order properly emphasizes the desirability of regulating the conduct of those who seek to do business with the State, the desirability of a regulation must be distinguished from the power to promulgate it.

Executive Order No. 4 required economic disclosures by State employees, and it was sustained in *Illinois State Employees Association v. Walker* (1974), 57 Ill.2d 512, as a proper exercise of the power that section 2 of article XIII of the Constitution grants to the Governor as head of the executive branch, "to establish and enforce ethical standards for that branch." The power granted by that provision does not, in our opinion, include the power to establish and enforce ethical standards for persons doing business with the executive branch. The present order does not regulate the conduct of officers and employees of the executive branch. Instead, its impact, including its sanctions, is upon third persons who are not a part of State government. It does not therefore fall within the authority granted by section 2 of article XIII.

The defendants have also suggested that the order may be justified as a rule or regulation under section 5 of the Illinois Purchasing Act (Ill. Rev. Stat. 1973, ch. 127, par. 132.5), which provides that all purchases by any State agency shall be in accordance with rules and regulations governing State agency procurement practices and procedures. We find it unnecessary to pursue this suggestion beyond noting that the order on its face purports to be the exercise by the Governor of an authority independently derived from the Constitution, and not the exercise of a delegated power.

For the reasons stated the order of the circuit court of Cook County is affirmed.

*Order affirmed.*