135 N.J. Super. 273 (1975)
343 A.2d 136
RALPH C. DE ROSE, INDIVIDUALLY, AND AS COMMISSIONER OF THE WATERFRONT COMMISSION OF NEW YORK HARBOR, PLAINTIFF,
v.
BRENDAN T. BYRNE, GOVERNOR, STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 7, 1975.
*276 Mr. William O. Barnes, Jr. for plaintiff.
Mr. William F. Hyland, Attorney General of New Jersey, for Defendant (Mr. Robert J. Del Tufo, First Assistant Attorney General, appearing).
KIMMELMAN, J.S.C.
Plaintiff Ralph C. De Rose, a commissioner of the Waterfront Commission of New York Harbor, brings this action against the Governor of the State of New Jersey for a declaratory judgment with appropriate restraints that (a) Executive Order No. 21 of 1975 which purports to make De Rose's position as commissioner full-time, is void, and (b) that the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 et seq., is inapplicable to De Rose's office as a member of a bi-state agency approved by act of Congress. Both parties having cross-moved for summary judgment, the matter is before the court for decision. In chronological fashion, the salient facts appear as follows:
*277 1. De Rose is an attorney at law of New Jersey practicing with the firm of De Rose, Spinrad and Schneider in East Orange.
2. On July 29, 1974, pursuant to an appointment by the Governor with the advice and consent of the Senate of New Jersey, De Rose was sworn as the New Jersey member of the Waterfront Commission of New York Harbor and thereupon assumed the duties of that office.
3. De Rose accepted the appointment with the understanding that the position would continue as a part-time post and that he would be able to continue in the active practice of law. The Governor acknowledges such understanding with De Rose, made during discussions with him prior to his appointment.
4. In early 1975 the Governor became aware that De Rose's law firm had entered into a five-year retainer agreement with Porter and Ripa Associates, Inc., an engineering firm, for the monthly payment of $10,000 by way of compensation. The retainer agreement, dated January 15, 1974, required the law firm, not merely De Rose, to make its members available at all times for the purpose of rendering the following enumerated professional services:
a. The rendering of general legal advice and opinions concerning all aspects of the business of client.
b. The negotiation, preparation and review of contracts entered into by client with third persons, including employees of the client.
c. The preparation and review of Environmental Impact Statements required by the National Environmental Policy Act of 1969 and subsequently enacted state statutes and regulations.
d. Review of and response to correspondence, attendance at meetings as requested, response to and initiation of phone communication as requested.
e. The institution or defense of any lawsuit in any court in New Jersey, before any administrative body, or before any arbitrators or mediators.
*278 f. All other legal duties not specifically set forth herein which reasonably and necessarily relate to client's interests.
5. The Governor then requested an opinion from the Attorney General of New Jersey as to whether De Rose's legal representation of Porter and Ripa Associates, Inc., while a member of the Waterfront Commission, violates the New Jersey Conflicts of Interest Law. That opinion, dated April 9, 1975, was duly rendered to the Governor with this conclusion:
There can be little doubt that De Rose is a state employee within the meaning of the conflicts statute. This much resolved, there is strong evidence of a conflict of interest in De Rose's continuing agreement to represent Porter and Ripa before the D.E.P. [Department of Environmental Protection], as well as other evidence of a potential conflict of interest due to the adverse interests which may be espoused by the D.E.P. during its hearings. Although the issue is not free from doubt, the forceful language of the Conflicts of Interest Law and its accompanying legislative history strongly suggest that this situation be rectified in line with the remedies proposed above.
6. On May 7, 1975 the Governor wrote to De Rose as follows:
Dear Ralph:
For several days I have tried to contact you without success. Your office indicated that you were in Beirut and could not be reached.
I have received a Memorandum of Law from the Attorney General which concludes that your representation of Porter & Ripa Associates, Inc., while a member of the Waterfront Commission, violates the conflict of interest provision of New Jersey law. I am attaching a copy of the Attorney General's report on this subject. The Attorney General has informed me that in the course of preparing this report, he considered carefully the arguments on the legal points which you made to him.
The normal procedures would require that the Attorney General forward this report to the Executive Commission on Ethical Standards for appropriate action. In the circumstances, I believe it would be preferable for you to resign your position as a member of the Waterfront Commission. This action would, in my judgment, be in the best interests of the State and of the Commission. I have previously indicated my belief that membership on the Waterfront Commission should become a full-time responsibility, and I intend to take appropriate steps toward that end.
*279 I hope you will agree that a voluntary resignation is the best way to resolve this matter.
 Sincerely,
 s/ Brendan T. Byrne
 GOVERNOR
7. De Rose refused to resign, and on the next day, May 8, 1975, the Governor issued Executive Order No. 21 which recited and directed the following:
WHEREAS, the Waterfront Commission of New York Harbor was created by the States of New Jersey (P.L. 1953, c. 202) and New York (L. 1953, c. 882, c. 883) with the consent of Congress (67 Stat. 541, Act August 12, 1953, c. 407) to improve the conditions under which waterfront labor is employed within the Port of New York district, and
WHEREAS, that Commission consists of two members, one chosen by each State, each of whom shall receive compensation to be fixed by the Governor of each State, and
WHEREAS, the scope and the nature of the responsibilities assumed by each said commissioner require that his full time be devoted to that undertaking, and
WHEREAS, the Commission's annual budget is submitted to the Governor of each State who then has thirty days to disapprove or reduce any item thereof;
NOW, THEREFORE, I, BRENDAN BYRNE, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the statutes of this State, do hereby ORDER and DIRECT:
1. That every commissioner of the said Waterfront Commission of New York Harbor, heretofore or hereafter chosen by the State of New Jersey, shall devote his entire time to the duties of the Commission and shall not engage in any gainful employment other than his official duties or responsibilities as a commissioner.
 s/ Brendan T. Byrne
 GOVERNOR
8. On May 15, 1975 De Rose instituted this action by way of verified complaint and order to show cause seeking temporary restraints. On that day this court met in chambers with De Rose's attorney and with the First Assistant Attorney General representing the Governor. Because of the very preliminary posture of the matter and with due deference for a coequal branch of government this court declined to issue an outright restraint against the Governor *280 but instead directed that the Governor not take any steps to enforce his executive order except upon seven days' notice to De Rose's attorney.
9. On the adjourned return day of the order to show cause, June 5, 1975, this court again declined to restrain the Governor, reimposed the same direction as aforesaid as to seven days' notice and also ordered that the Attorney General "be obliged to notify the court promptly of any adverse action which may hereafter be contemplated against plaintiff and of which the Attorney General has knowledge * * *"
10. Both sides thereafter moved, in due course, for the entry of summary judgment. De Rose's supporting affidavit, not challenged in any way, shows that he devotes approximately 20 hours a week to his duties as commissioner, with the remainder of his working hours spent as a partner in his law firm; that he receives a salary as commissioner of approximately $33,000 a year and that from the very inception of the Waterfront Commission in 1953 the New Jersey commissioners all served part-time and engaged in other gainful employment  usually the practice of law.
11. The Governor's supporting affidavit, dated June 27, 1975, recites in pertinent part:
3. In discussions which I had with plaintiff prior to his appointment as New Jersey's representative to the Waterfront Commission of New York Harbor, it was anticipated that service on the Commission would proceed on a part-time basis. At the time of those initial conversations, however, I was aware neither of plaintiff's intention to represent private clients before various New Jersey State agencies nor of the magnitude of the work required by him in dealing with his private practice. With particular reference to Porter & Ripa Associates, Inc., I was unaware of the extraordinary demands of availability and potential service which are called for under plaintiff's arrangement with that client. I was then aware neither of the retainer arrangement which plaintiff had with that client, nor of the fact that plaintiff had previously represented Porter & Ripa before the Department of Environmental Protection, nor of plaintiff's agreement to represent Porter & Ripa before this agency and possibly other State agencies in the future.
I am convinced, as stated in my May 7, 1975 letter to plaintiff, that the responsibilities of the office are of sufficient sensitivity and *281 importance to justify full-time attention. This view is reflected in Executive Order No. 21 of 1975 which I promulgated on May 8, 1975. New Jersey's representative to the Waterfront Commission should not, while he serves, engage in private employment or enterprise and, with reference to the present circumstances, he should not undertake to represent private clients, particularly before other State agencies. Such full-time service is essential to the avoidance not only of actual conflicts of interest but also of the appearance of such conflicts. The nature and importance of the office of Waterfront Commissioner, as well as the need to maintain public confidence in the Waterfront Commission and in government generally, demands no less. These considerations, especially when coupled with the sensitive and far-reaching responsibilities of the post, require the New Jersey representative to devote his full time and attention to his public duties and to eschew other efforts for private gain.
12. Three days after executing the foregoing affidavit in which he reiterated the direction contained in Executive Order No. 21 that De Rose devote full-time and attention to his public duties and not engage in any other gainful employment, the Governor, without notice to the court and apparently without notice to the Attorney General, directed a letter to the executive director of the Waterfront Commission disapproving the $33,390 salary item for De Rose in the 1975-1976 budget of the Commission and ordered that it be eliminated.

I
Although the issues have been framed in legal fashion, the political overtones of this dispute are unmistakable. Nevertheless, this court may not concern itself with nor speculate upon these extrajudicial matters. Nor is there before the court any question as to the propriety of the Porter and Ripa retainer agreement and the substantial compensation to be earned by the De Rose law firm thereunder. Undoubtedly, these factors are of interest to the Governor and may have motivated his actions. This court, however, is not required to pass upon the same in view of its analysis of the applicable legal issues.

*282 II
The core of the problem presented centers about the construction and interpretation of the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 et seq. and its applicability to a member of the Waterfront Commission of New York Harbor, a bi-state agency created by compact between the Legislatures of New York and New Jersey and approved by act of Congress. Specifically, the question is whether the Waterfront Commission is a state agency and De Rose a state officer within the meaning and scope of the conflicts of interest law.
The current version of the Conflicts of Interest Law, L. 1971, c. 182, § 1 et seq., effective January 11, 1972, was designed to regulate the outside or unofficial conduct of state officers and employees and members of the Legislature in order to avoid activities which create an impression that their public trust is being violated.
N.J.S.A. 52:13D-16(b) provides in pertinent part that
No State officer * * * nor any partnership * * * in which he has an interest, nor any partner * * * or employee of any such partnership * * * shall represent, appear for, or negotiate on behalf of, or agree to represent, appear for, or negotiate on behalf of, any person or party * * * in connection with any cause, proceeding, application or other matter pending before any State agency; * * *
A "state officer or employee" means any person holding an office or employment in a state agency, N.J.S.A. 52:13D-13(b), and a "state agency" is defined as "any of the principal departments in the Executive Branch of the State Government, and any division, board, bureau, office, commission or other instrumentality within or created by such department * * * and any independent State authority, commission, instrumentality or agency * * *." N.J.S.A. 52:13D-13(a).
The "head of a state agency" means (1) in the case of the Executive Branch of the State government, the department head or, if the agency is not assigned to a department, the Governor, and (2) in the case of the Legislative Branch, the *283 chief presiding officer of each house of the Legislature. N.J.S.A. 52:13D-13(d).
The Waterfront Commission is not assigned to any department of State Government and hence, within the context of this statute, the Governor is deemed to be its "head" if it is a "state agency."
N.J.S.A. 52:13D-23 imposes a key duty upon the head of each state agency in order to make the Conflicts of Interest Law a workable piece of legislative machinery. "The head of each State agency * * * shall within 6 months from the date of enactment [of the New Jersey Conflicts of Interest Law  June 2, 1971] promulgate a code of ethics to guide the conduct of * * * the State officers and employees in the agency to which said code is applicable." When formulated such code must first be approved by the Attorney General and the Executive Commission on Ethical Standards.
It is conceded by the Attorney General that neither the present Governor nor his predecessor has since June 2, 1971 ever caused to be promulgated a code of ethics to guide the conduct of the New Jersey member of the Waterfront Commission, nor has the Waterfront Commission itself deemed this particular statute applicable and formulated a code of ethics for itself pursuant to its terms and standards.
Is this failure on the part of the Governor to promulgate a code of ethics for an agency which he is deemed to "head" by virtue of the statute simply neglect and oversight on his part or rather a recognition that the New Jersey Conflicts of Interest Law was not intended to cover bi-state agencies such as the Waterfront Commission of New York Harbor? For reasons hereafter stated, there was no neglect on the part of the Governor. The Waterfront Commission is not a state agency and De Rose is not a state officer within the meaning of the New Jersey Conflicts of Interest Law.
As the product of an interstate compact, the Waterfront Commission is not a single state agency created and *284 exclusively controlled by one state. It is an instrumentality of the States of New York and New Jersey and beyond being an agent of each state it is an agent of both of them. State v. Murphy, 36 N.J. 172, 185-186 (1961). At one and the same time it is part of both states. Cf. Delaware River and Bay Auth. v. New Jersey Public Employment Rel. Comm'n, 112 N.J. Super. 160, 165 (App. Div. 1970), aff'd 58 N.J. 388 (1971). Consequently, De Rose, once having been appointed as the New Jersey member of the Waterfront Commission, N.J.S.A. 32:23-8, became as much a part of the governmental structure of New York as he is part of the governmental structure of New Jersey. All bi-state officers occupy a unique status and cannot be classified as an officer of a particular state without simultaneously being classified as an officer of all states party to the interstate compact.[1]
While the external affairs or outside conduct of bi-state agencies and their officers may be subject to some state regulation, Agesen v. Catherwood, 26 N.Y.2d 521, 311 N.Y.S.2d 886, 260 N.E.2d 525 (Ct. App. 1970), the internal structure of the New Jersey Conflicts of Interest Law precludes such application here. The Attorney General would isolate and apply N.J.S.A. 52:13D-16 (b) against De Rose on the abstract proposition of his being a state officer[2] *285 and would ignore other provisions of the law relative to employees of an agency or the promulgation of a code of ethics for officers and employees of an agency. Unfortunately, he may not do so.
The various provisions of a single act must be so read that all may, if possible, have and be given effect without repugnancy or inconsistency so as to render the statute a consistent and harmonious whole. A court is bound to read the entire statute and construe it as a homogeneous whole rather than to limit its focus on an isolated section. No single component part may be utilized to ascertain the true meaning and scope of the entire statute. In the interpretation of a statute the Legislature will be presumed to have inserted every part thereof for a purpose. The different parts of a statute reflect light upon each other and statutory provisions are regarded as in pari materia where they are parts of the same act. A statute should not be construed in such manner as to render it partly effective or inefficient if another construction will make it wholly effective. If a statute is at all applicable, it applies in its entirety and must be given effect accordingly. Delaware River and Bay Auth., supra, 112 N.J. Super. 164; Denbo v. Moorestown Tp., 23 N.J. 476, 481-482 (1957); Wager v. Burlington Elevators, Inc., 116 N.J. Super. 390, 395 (Law Div. 1971); State v. Madewell, 117 N.J. Super. 392, 394-395 (App. Div. 1971), aff'd 63 N.J. 506 (1973); State v. Kress, 105 N.J. Super. 514, 520 (Law Div. 1969); State v. Angleton, 89 N.J. Super. 85, 89 (App. Div. 1965); Gould v. Theresa Grotta Center, 83 N.J. Super. 169, 175 (Law Div. 1964) aff'd 89 N.J. Super. 253 (App. Div. 1965). See 73 Am. Jur.2d, Statutes, § 191 at 389-390; § 250 at 423, 424; 2A Sutherland, Statutory Construction (4 ed.), § 46.05 at 56.
If the act were made to apply in its entirety to the Waterfront Commission, the following would be contemplated:
*286 1. The Governor as "head" of the agency (which he is not) or the agency itself must formulate a code of ethics to apply to its officers and all employees, whether they reside in New Jersey or New York. N.J.S.A. 52:13D-23(a). Any code of ethics promulgated by the agency itself must have the concurrence of the New York Commissioner. N.J.S.A. 32:23-9. New Jersey, of course, may not impose its will upon the New York Commissioner without his consent.
2. The Executive Commission on Ethical Standards would be empowered to suspend from employment with the Waterfront Commission and fine any officer or employee, including the New York commissioner appointed by the Governor of New York (who becomes by virtue of his appointment an officer or agent of New Jersey), who is found to have violated any provisions of the code.
Not only was the foregoing not contemplated by the Legislature in enacting the Conflicts of Interest Law but the onus thereby imposed on a bi-state instrumentality without the consent of New York would violate and impinge upon the terms of the compact. See Delaware River and Bay Auth. v. New Jersey Public Employment Rel. Comm'n, supra, where the New Jersey Employer-Employee Relations Act was held not to apply to a bi-state agency described by the court as "a single agency of government of both states." 112 N.J. Super. 165.
In order to avoid such result, the New Jersey Conflicts of Interest Law must be read and construed as not applying to interstate instrumentalities. The only manner in which the act may be applied as a harmonious whole is to exclude bi-state agencies. Hence, the Attorney General's construction which would carve out and apply only sections suitable to the Governor's position may not be adopted.

III
Can Executive Order No. 21 convert the position of the New Jersey member of the Waterfront Commission of New York from a part-time to a full-time post?
*287 The Attorney General admits the absence of the existence of any state of emergency which prompted the Governor to issue Executive Order No. 21 changing the terms of De Rose's office in midstream when he had initially agreed to it being part-time. Rather, the justification is sought in the Governor's subsequent awareness of the magnitude of the work required by De Rose in dealing with his private practice and of the extraordinary demands of availability and potential service which are called for under the retainer agreement with Porter and Ripa Associates, Inc. These activities of De Rose must yield, the Governor concludes, to the responsibilities of the office of Waterfront Commissioner which he holds are of sufficient sensitivity and importance to justify full-time attention.
None of the foregoing reasoning is supportive of the executive order. Completely ignored are the facts and the law. The Porter and Ripa retainer agreement is not solely with De Rose but with his law firm, and the legal responsibilities undertaken thereby are the law firm's and not solely De Rose's. His affidavit, not controverted, indicates that he has sufficient working hours to accommodate the needs of his official office.
Additionally, the Legislatures of New York and New Jersey, in establishing the Waterfront Commission in 1953, contemplated either part-time or full-time commissioners at their option. Note N.J.S.A. 32:23-11, which provides that the "powers and duties of the commission may be exercised by officers, employees and agents designated by them, except the power to make rules and regulations." The commissioners opted for the appointment of subordinate officers and employees to carry out the day-to-day operations of the Waterfront Commission and thus confined themselves to rule-making and supervisory functions which they considered to be part-time. Every New Jersey commissioner serving prior to De Rose has functioned on that basis. Clearly, this finds legal sanction in the original compact *288 between the states. The Governor has not shown, as was his burden, that the responsibilities of a waterfront commissioner and the needs of the office or its sensitivity have changed over the years since 1953 to now warrant full-time service.
An executive order must find support for its validity either in a state of facts which gives rise to an emergent situation or must be based upon the furtherance of a legislative act or constitutional mandate. Youngstown Sheet Tube Co. v. Sawyer, 343 U.S. 579, 585, 72 S.Ct. 863, 96 L.Ed.2d 1153 (1952). No such circumstance is here present. The absence of an emergency is conceded; De Rose is not an employee of the Executive Department; his salary is not paid by the taxpayers of New Jersey but by assessments levied upon companies using port facilities and operating under authority of the commission, N.J.S.A. 32:23-58; neither legislature has authorized unilateral executive orders which could affect the office of waterfront commissioner, and the Constitution of New Jersey does not speak to the point.
Even with respect to purely state officers, such as prosecutors within the Executive Department and under the control of the Governor, when the Governor sought to make them full-time and prohibit them from the practice of law or other gainful employment, it required an act of the Legislature which when adopted, applied prospectively only and not to those prosecutors holding office at the time of passage. L. 1970, c. 6, § 1, approved February 9, 1970.
Moreover, were De Rose's position to be made full-time while his coequal New York commissioner remains part-time, a serious question would arise as to a denial to De Rose of the equal protection of the laws. Generally speaking, all persons in like circumstances and like conditions must be treated alike, both as to privileges conferred and as to liabilities or burdens imposed. De Rose may well argue that without similar action being taken by the Governor *289 of New York, Executive Order No. 21 is a constitutional nullity.
One final issue remains for decision. Was the Governor's act in eliminating De Rose's salary from the budget of the Waterfront Commission, in view of the Governor's steadfast position, by executive order and recent affidavit, that De Rose "devote full time and attention to his public duties" and that he "eschew other efforts for private gain" valid? Or was his attempt to require a public official to work full-time for no compensation an arbitrary and capricious exercise of executive power? In order to furnish a proper basis for judicial decision, counsel are directed to amend the pleadings in the cause so as to frame this issue which arose only after the cross-motions for summary judgments had been filed.
For the foregoing reasons, De Rose is entitled to retain his position on a part-time basis as a member of the Waterfront Commission of New York Harbor free of any restriction contained in the New Jersey Conflicts of Interest Law.
NOTES
[1] Senate Bill No. 3046 introduced in the current legislative session on February 13, 1975 for the purpose of extending the provisions of the New Jersey Conflicts of Interest Law, while not binding upon this court, impliedly recognizes as much in its statement: "Members of interstate bodies are officers of both states party to the compact, and thus are not `state officers' subject to the present Conflicts of Interest Law."
[2] By its terms N.J.S.A. 52:13D-16(b) would not seem to apply to prospective matters, i.e., where an attorney (-) state officer might in the future be called upon to represent a client before a state agency. The act seems only to prohibit representation before state agencies in matters presently docketed and then pending before them. No one has been able to point to any matter now pending before a state agency in which De Rose or his law firm appears  only that such future possibility exists.