Request of Governor and Council
No. 7493

OPINION OF THE JUSTICES

June 30, 1976

The following resolution was adopted by the Governor and Council on May 26, 1976, and filed with the supreme court on May 26, 1976:

"WHEREAS Article 62 of the Second Part of the New Hampshire Constitution authorizes the Governor to convene the Executive Council from time to time to 'hold a council, for ordering and directing the affairs of the state, according to the laws of the land.';

"WHEREAS Article 38th of the First Part of the Constitution enjoins a 'frequent recurrence to the fundamental principles of the constitution, and a constant adherence to justice, moderation, temperance, industry, frugality, and all the social virtues' and vests in the people 'a right to require of their law-givers and magistrates, an exact and constant observance of them, in the formation and execution of the laws necessary for the good administration of government.';

"WHEREAS Article 56 of the Second Part provides that '[n]o moneys shall be issued out of the treasury of this state, and disposed of . . . but by warrant under the hand of the governor for the time being, by and with the advice and consent of the council, for the necessary support and defense of this state, and for the necessary protection and preservation of the inhabitants thereof, agreeably to the acts and resolves of the general court.';

"WHEREAS RSA 4:15 provides that '[t]he expenditure of any moneys appropriated or otherwise provided to carry on the work of any department of the state government shall be subject to the approval of the governor, with the advice of the council, under such general regulations as the governor and council may prescribe with reference to all or any of such departments, for the purpose of securing the prudent and economical expenditures of the moneys appropriated.';

"WHEREAS each of the three branches of the government established by the Constitution and recognized in Article 37th of its First Part has an obligation to ensure that in the conduct of the business of the State the members of the various branches of the government take care to avoid conflicts between their personal interests and their obligations to ensure the integrity of government and the confidence of the people in the propriety of the actions of those elected to public office;

"WHEREAS the judicial branch has addressed that obligation through the common law rule recognized in *Atherton* v. *Concord,* 109 N.H. 164 (1968), that a public official is disqualified from acting on a matter in which he 'has a direct personal and pecuniary interest';

"WHEREAS the legislative branch has addressed this obligation

by the enactment of 'specific prohibitions for isolated instances of conflict of interest, *see, e.g.,* RSA ch. 95: RSA 492:2,' RSA 284:4 (supp), but has enacted 'no general statute on the subject.' *Marsh v. Hanover,* 113 N.H. 667 (1973);

"WHEREAS the Constitution and statutes of the State place upon the executive branch, as upon the other branches, the same obligation, when exercising its constitutional powers, to use its best judgment in adopting policies to preclude conflicts of interest within the operation of the government;

"WHEREAS on December 10, 1975 the Governor and Council adopted a resolution moved by Councilor Hayes, which stated a policy designed to preclude conflicts of interest on the part of elected State officials who might be proposed for employment or appointment by the executive branch, or who might be directly or indirectly contractors with the State government;

"WHEREAS the Governor and Council on February 4, 1976 voted to suspend this policy for further consideration of it, and on February 18, 1976 adopted a further resolution defining that policy to preclude conflicts of interest on the part of elected State officials, to be effective from and after March 3, 1976;

"WHEREAS that policy as finally adopted on February 18, 1976 is that the Governor and Council will not consider an elected State official for employment or appointment within the executive branch while he retains his elected position and will not award contracts for services to an elected State official and will not contract with anyone employing elected State officials unless the contracts are entered into in accordance with an open competitive bidding procedure, as more fully appears from a copy of the February 18 resolution attached hereto;

"WHEREAS the Governor and Council adopted this policy to insure the independence, and the appearance of independence, of elected officials from the executive branch of the government, and to insure the independence of the officials of the executive branch from all elected officials who might otherwise induce the officials of the executive branch to contract with them, or who might appear to induce such contracting;

"WHEREAS the appointment of elected officials, and contracts with them, have been a source of criticism and suspicion by citizens who have observed such practices in the past;

"WHEREAS such criticism and suspicion had not been addressed by any other agency of the government and have not otherwise been addressed since adoption of the policy of the Governor

and Council on February 18, 1976;

"WHEREAS in the adoption of this policy the Governor and Council unanimously embodied a policy which in their best judgment would serve to satisfy their obligation on behalf of the executive branch of the government to insure integrity in all those governmental functions in which their scrutiny and action was necessary and appropriate;

"WHEREAS on May 4, 1976 the Governor and Council applied their policy by refusing to contract with a social service agency whose executive director was a member of the House of Representatives;

"WHEREAS on May 12, 1976 the House of Representatives adopted House Resolution 9 calling upon the Governor and Council to rescind its policy or face judicial action contesting the validity of the action of the Governor and Council in adopting the policy, 1976 H.J. 248, a copy of which is attached;

"WHEREAS the Governor and Council earlier this day extended an existing contract with that social service agency through June 30, 1976, to provide time for an orderly resolution of the differences between the Governor and Council and the House of Representatives without forcing upon the executive director of that social service agency a choice he does not wish to make;

"WHEREAS the differing judgments of the House of Representatives and the Governor and Council over the power of the Governor and Council to adopt a policy to prevent conflicts of interest have caused friction affecting their working relationship within the government and to threaten acceptance of a policy which the House agrees is laudable in its purpose; and

"WHEREAS this disagreement within the government over the constitutional power of the Governor and Council to act to prevent conflicts of interest presents an important question of law upon a solemn occasion;

"NOW THEREFORE BE IT RESOLVED that the Honorable Justices of the Supreme Court of New Hampshire be respectfully requested to give their opinion on the following question:

"Does any provision of the Constitution of New Hampshire preclude the Governor and Council, in the exercise of their powers over matters coming before them for their approval, from adopting and applying the policy described above, which is appropriate in their judgment to prevent conflicts of interest on the part of elected State officials?

"AND BE IT FURTHER RESOLVED that the Secretary of

State be directed to transmit six attested copies of this resolution to the Clerk of the Supreme Court."

The following answer was returned:

*To His Excellency the Governor and the Honorable Council:*

The undersigned justices of the supreme court submit the following answers to the questions contained in your resolution adopted on May 26, 1976, and filed with this court on the same day. At the request of counsel for the Governor and Council and the speaker of the house of representatives oral argument was heard on the agreed date of June 23, 1976.

The following policy was established by the Governor and Council on February 18, 1976, to become effective March 3, 1976:

*"Policy on Employment or Appointment of Elected Officials*
"The Governor and Council will follow a stringent policy with respect to their consideration of any items coming before them for action involving employment or appointment of elected State officials:

"(1) *After this date* [March 3, 1976] no elected State official will be considered for employment or appointment to any position within the Executive Branch of government during his term of office unless said official shall officially resign his elected position in accordance with the provisions of RSA 14:2 prior to assuming his duties and further certifies that during the period of said employment or appointment he shall not stand for election to any State office.

*"Provided, however, that nothing contained herein shall be read to restrict the continued employment or appointment of any persons holding such positions within the* Executive Branch on this date [March 3, 1976].

"(2) An elected State official who desires to provide contracted services or consultant services of any kind shall be subject to the same conditions as contained in (1) above, *unless said services are as a result of open competitive bidding.*

"(3) No contractor, contracting firm, partnership, or sole proprietorship shall employ any elected State official in any capacity whatsoever during the period of any contract or agreement approved by Governor and Council after this date [March 3, 1976] *which is not the product of open competitive bidding.* All state agencies shall include a clause in each contract or agreement en-

tered into *after this date* [March 3, 1976] prohibiting the employment of any elected State official by the contracting parties during the period in which said contract or agreement is in force with the agency, *except and unless said contract or agreement is as a result of open competitive bidding.*"

Your question raises the issue of whether any provision of the constitution of the State of New Hampshire precludes the Governor and Council, "in the exercise of their powers over matters coming before them for their approval", from adopting this policy "which is appropriate in their judgment to prevent conflicts of interest on the part of elected State officials".

It is not disputed that elected State officials consist for the most part of 424 members of the legislature. Clearly it is not within the prerogative of the Governor and Council to regulate the conduct of such officials. It follows that the issue is not whether the prevention of conflicts of interest on the part of elected State officials is a proper concern for the Governor and Council, but whether the Governor and Council have the power to promulgate such a policy. Part (1) of the policy concerns the employment and appointment of officials within the executive branch of government. As the executive power of the State is vested in the Governor, it is the inherent power of the Governor and Council to direct and regulate the internal workings of the executive department. N.H. CONST. pt. II, art. 41; *Barry v. King*, 106 N.H. 279, 210 A.2d 161 (1965). The establishment of the policy by part (1) to regulate employment and appointment affects only the executive branch of government, and as such may be formulated under the ancillary powers of the Governor and Council which may be exercised so as to ensure the efficiency of that branch. *Opinion of the Justices*, 85 N.H. 562, 567, 154 A. 217, 223 (1931). In our opinion the constitution does not preclude the Governor and Council from adopting part (1) of the policy with respect to employment or appointment to positions in the executive branch.

Parts (2) and (3) of the policy, however, do not simply regulate the internal workings of the executive branch, but would purport to restrict the employment of legislators outside of the executive branch. If they are to be valid, parts (2) and (3) must be promulgated under the authority of a constitutional or statutory provision, which either specifically or by necessary implication authorizes this executive policy. *Shapp v. Butera*, 348 A.2d 910, 913 (Pa. Commw. 1975); *Martin v. Chandler*, 318 S.W.2d 40, 44 (Ky. 1958); *DeRose v. Byrne*, 135 N.J. Super. 273, 343 A.2d 136 (1975).

It is argued that Governor and Council have authority to establish these provisions under part II, articles 41, 56, and 62 of the constitution and under RSA 4:15. Part II, article 41 of the New Hampshire constitution reads in pertinent part, "The executive power of the state is vested in the governor. The governor shall be responsible for the faithful execution of the laws. He may, by appropriate court action or proceeding brought in the name of the state, enforce compliance with any constitutional or legislative power, duty, or right, by any officer, department or agency of the state." The intent of this article is to impose a duty upon the Governor to carry out the legislative mandates and to enforce constitutional requirements. Although the article grants executive power and responsibility, it must be exercised "within the dictates of the constitution and the lawful enactments of the legislative branch". *Opinion of the Justices,* 113 N.H. 141, 148, 303 A.2d 752, 756 (1973); *O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974). The article gives the executive the power to enforce the law, but not to enact it. *State ex rel. Thomson v. State Bd. of Parole,* 115 N.H. 414, 419, 342 A.2d 634, 637 (1975); *see* Frankel, *The Governor's Private Eyes,* 49 B.U.L. Rev. 627, 633-35 (1969); Note, *Gubernatorial Executive Orders as Devices for Administrative Direction and Control,* 50 Iowa L. Rev. 78, 85-92 (1964). The "supreme legislative power" remains vested in the legislature. N.H. CONST. pt. II, art. 2; *Ferretti v. Jackson,* 88 N.H. 296, 299, 188 A. 474, 476 (1936).

Part II, article 56 of our constitution reads in part, "No moneys shall be issued out of the treasury of this state, and disposed of . . . but by warrant under the hand of the governor for the time being, by and with the advice and consent of the council, for the necessary support and defense of this state, and for the necessary protection and preservation of the inhabitants thereof, agreeably to the acts and resolves of the general court." The purpose of this article is to delegate to the Governor the power to insure that no payments be made from the public treasury except for public purposes and in accordance with the law. *State v. Kimball,* 96 N.H. 377, 77 A.2d 155 (1950). The article does not purport to provide the executive with the authority to establish law.

Part II, article 62 of the State constitution gives the Governor the power and authority to convene the Council for the purpose of directing affairs of State *"according to the law of the land".* Article 62 is not authority for parts (2) and (3) of the policy.

It is maintained that even if the power to establish parts (2) and (3) of the policy may not be found in the constitution, that author-

ity has been specifically delegated to the Governor and Council by the legislature in RSA 4:15. That statute reads, "The expenditure of any moneys appropriated or otherwise provided to carry on the work of any department of the state government shall be subject to the approval of the governor, with the advice of the council, under such general regulations, as the governor and council may prescribe with reference to all or any of such departments, for the purpose of securing the prudent and economical expenditures of the moneys appropriated." Although the Governor and Council are delegated the legislative power to formulate regulations under this section, those regulations must be ancillary to their constitutional authority and designed to insure that State funds will be prudently and economically spent. They may not establish a policy with respect to procurement of services by contract with elected State officials or with employers of such officials. Parts (2) and (3) of the executive policy do not fall within any authority granted to the Governor and Council by the constitution, and further may not be justified as promulgated within the exercise of a delegated power. *Buettell v. Walker,* 59 Ill. 2d 146, 319 N.E.2d 502 (1974).

The legislature has indicated a willingness and purpose to legislate in the area of conflict of interest, partial though it may be. *See* RSA 95:1 (Supp. 1975); RSA 98:18; RSA 70:2 IV. Parts (2) and (3) of the executive policy would vary the requirements of RSA 95:1 (Supp. 1975). Parts (2) and (3) would also have the practical effect of regulating legislative power and authority in contravention of part I, article 37, and part II, article 2 of the New Hampshire constitution. *Attorney-General v. Meader,* 80 N.H. 292, 293, 116 A. 433, 434 (1923). The separation of powers requirement of the constitution (N.H. CONST. pt. I, art. 37) is violated by an encroachment by one branch of government upon a constitutional function of another. *Opinion of the Justices,* 110 N.H. 359, 363, 266 A.2d 823, 826 (1970); *Opinion of the Justices,* 101 N.H. 531, 133 A.2d 792 (1957); *Opinion of the Justices,* 86 N.H. 597, 166 A. 640 (1933); *Merrill v. Sherburne, & al.,* 1 N.H. 199 (1818).

However desirable comprehensive legislation in the area of conflict of interest may be, the enactment of such legislation is the prerogative and responsibility of the legislature and not of the executive. *See* Eisenberg, *Conflicts of Interest Situations and Remedies,* 13 Rutgers L. Rev. 666 (1959); Rhodes, *Enforcement of Legislative Ethics: Conflict Within the Conflict of Interests Laws,* 10 Harv. J. on Legis. 373 (1973); Note, *Conflict of Interests: State Government Em-*

*ployees,* 47 Va. L.R. 1034 (1961). In summary, part (1) of the executive policy is valid; parts (2) and (3) are invalid.

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

June 18, 1976

Governor Meldrim Thomson, Jr., and Executive Councilors Lyle E. Hersom, James H. Hayes, Leon G. Yeaton, Louis D'Allesandro and Bernard A. Streeter, Jr., by *David H. Souter,* attorney general, and *Richard V. Wiebusch,* assistant attorney general, filed brief.

George B. Roberts, Jr., speaker of the house of representatives, by *Michael R. LaFontaine,* Esq., filed memorandum of law.

June 21, 1976

Seacost Regional Counseling Center, amicus curiae, *by Shaines, Madrigan & McEachern* and *Gregory D. Robbins,* attorney, filed brief.

Richard A. Lockhart, State representative from District No. 17, and administrative director of the Seacoast Regional Counseling Center, by *Anthony A. McManus,* Esq., filed memorandum of law.