585 A.2d 587

The **DELAWARE RIVER PORT AUTHORITY, The Honorable Barbara G. Jones, and The Honorable William K. Dickey, Commissioners of the Delaware River Port Authority, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, STATE ETHICS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1990.

Decided Jan. 9, 1991.

See also 126 Pa.Cmwlth. 147, 558 A.2d 932.

John M. Elliott, with him, Brian P. Kenney and Frederick P. Santarelli, Elliott, Bray & Riley, Philadelphia, for petitioners.

Vincent J. Dopko, Chief Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

KELLEY, Judge.

In this original jurisdiction action, the Delaware River Port Authority (authority) seeks a declaratory judgment that the State Ethics Commission Act (Ethics Act)[1] does not apply to the authority, its officers, commissioners or employees. The authority has moved for judgment on the pleadings, which we now grant.

Section 404 of the Ethics Act requires that "each public employee and public official of the Commonwealth" must file financial interests statements (FIS).[2] The present controversy began on September 29, 1987, when one of the commissioners, Charles G. Kopp, requested advice from the State Ethics Commission (SEC) as to whether he was a "public official" under the Ethics Act so as to be required to file an FIS. The SEC determined that he was subject to the Ethics Act and issued an opinion to that effect on December 22, 1987. The SEC opinion also identified the authority as "a political subdivision of the Commonwealth, as that term is defined in the Ethics Act...."

1. Act of October 4, 1978, P.L. 883, *as amended,* 65 P.S. §§ 401–413.
2. 65 P.S. § 404.

On October 13, 1988, the authority and two of its commissioners [3] filed this declaratory judgment action, in which they urge this Court to declare that officials and employees of the authority are not "public employees and officials" as defined in the Ethics Act, and that the authority is not a "political subdivision" subject to the jurisdiction of the SEC. Alternately, the authority argues that application of the Ethics Act to the authority would constitute invalid unilateral legislation in violation of the interstate compact between Pennsylvania and New Jersey which created the authority. Since we find the latter issue controlling, we need not reach the question of interpreting the definitions of "public employees and officials" or of "political subdivision."

The authority was created by interstate compact between the Commonwealth of Pennsylvania and the State of New Jersey for the purpose of developing and maintaining bridges between the two states.[4] The authority consists of sixteen commissioners, eight appointed by the Governor of New Jersey, six appointed by the Governor of Pennsylvania, with the Attorney General and State Treasurer of Pennsylvania serving ex officio.

Rather than an agency of a single state, it is a public corporate instrumentality of both Pennsylvania and New Jersey. *Nardi v. Delaware River Port Authority*, 88 Pa. Commonwealth Ct. 558, 560, 490 A.2d 949, 950 (1985).

Bi-state agencies such as the authority do not exist in a vacuum and are not immune from regulation. Such regulation can take several forms. First, the member states can pass substantially similar legislation, as contemplated by the compact.[5] Second, the compact itself may authorize

**3.** Petitioner Jones was duly appointed commissioner by the Governor of Pennsylvania, while petitioner Dickey was duly appointed by the Governor of New Jersey.

**4.** Section 1 of the Act of June 12, 1931, P.L. 575, *as amended,* 36 P.S. § 3503 and N.J.Stat.Ann. §§ 32:3–1 to 32:3–18.

**5.** The compact provides that the authority "shall also have such additional powers as may hereafter be delegated to or imposed upon it from time to time by the action of either state concurred in by legislation of the other." 36 P.S. § 3503, Article IV.

unilateral legislation. Such was the case in *Henderson v. Delaware River Joint Toll Bridge Commission*, 362 Pa. 475, 66 A.2d 843 (1949). Also, the authority must, by necessity, be subject to state laws involving public health and safety, as stated in *Agesen v. Catherwood*, 26 N.Y.2d 521, 311 N.Y.S.2d 886, 260 N.E.2d 525 (1970).[6] This does not mean, however, that either creator state can unilaterally impose additional duties, powers or responsibilities upon the authority. *Nardi*, 88 Pa.Commonwealth Ct. at 560, 490 A.2d at 950.

Here, the compact does not expressly authorize either state to impose FIS requirements on members or employees of the authority. Neither is it contended that Pennsylvania and New Jersey have passed substantially similar legislation, as contemplated by the compact. The key question, therefore, is whether application of the Ethics Law constitutes unilateral imposition of additional duties, powers or responsibilities on the authority.

In *Nardi*, the controversy involved a Pennsylvania law providing for disability benefits to members of the authority police who were injured in the performance of their duties. The statute provided that benefits would be paid "until the disability . . . has ceased." A New Jersey act provided for similar benefits, but limited their duration to no more than one year. The appellant in *Nardi* conceded that neither state could unilaterally impose duties on the authority, but contended that the two statutes, read together, were substantially similar in at least providing for benefits for one year.

The court disagreed, looking first to the powers granted to the authority by the interstate compact, which included the ability "[t]o appoint, hire or employ counsel and such other officers, and such agents and employes, as it may require for the performance of its duties, by contract or otherwise, and fix and determine their qualifications, duties

6. We express no opinion as to the applicability of the "internal operations/external relations" dichotomy discussed in *Agesen* and neither adopt nor reject it.

and compensation...."[7]   Since the authority already had the power to determine compensation, the court reasoned that the Pennsylvania statute must be denied effect as an attempt to impose an additional burden on the authority, while the New Jersey statute must also be denied effect as an attempt to restrict a power already possessed by the authority. *Id.*, 88 Pa.Commonwealth Ct. at 565, 490 A.2d at 952.

We find the same reasoning appropriate here.   The authority could certainly require its own members and employees to file an FIS.   We believe, however, that a similar unilateral requirement by either state, without the approval of the other, would result in an imposition of an additional duty similar to that held to be improper in *Nardi.*   While the SEC argues that the requirement to file an FIS would impose no additional duty on the authority's members or employees, we cannot agree.   If the Ethics Act applies, provisions other than the FIS requirement would also apply. These include a provision which prohibits a "public official" from taking the oath of office, or entering or continuing upon his duties if he fails to file an FIS.[8]

We are also persuaded by opinions from other jurisdictions.   In a recent case involving the authority, the New Jersey Supreme Court cited *Nardi,* holding that the New Jersey Department of Community Affairs could not unilaterally impose on the authority obligations set forth in the New Jersey Uniform Construction Code and the New Jersey Law Against Discrimination. *Eastern Paralyzed Veterans Assoc. v. Camden,* 111 N.J. 389, 545 A.2d 127 (1988).

The New Jersey Superior Court has held that New Jersey could not unilaterally vest its Public Employment Relations Commission with jurisdiction over a bi-state agency in violation of the compact which made no provision for such jurisdiction. *Delaware River & Bay Authority v. New Jersey Public Employment Relations Commission,* 112

7.  *Nardi,* 88 Pa.Commonwealth Ct. at 561, 490 A.2d at 950 (quoting 36 P.S. § 3503, Article IV(e)).

8.  65 P.S. § 404(d).

N.J. Super. 160, 270 A.2d 704 (1970), *aff'd*, 58 N.J. 388, 277 A.2d 880 (1971).

Finally, the courts have also found New Jersey's Conflict of Interest Law inapplicable to a bi-state agency. *De Rose v. Byrne*, 135 N.J.Super. 273, 343 A.2d 136 (1975). *De Rose* dealt with the Waterfront Commission of New York Harbor, a bi-state agency created by compact between New Jersey and New York. The New Jersey Court stated that "[a]ll bi-state officers occupy a unique status and cannot be classified as an officer of a particular state without simultaneously being classified as an officer of all states party to the interstate compact." (Footnote omitted.) *Id.* at 284, 343 A.2d at 142.

The court further found that if the act were to apply, it must apply in its entirety, including a provision that would allow the "head" of the agency to promulgate a code of ethics for officers and employees of the agency. If this were to be allowed, the court reasoned, the Executive Commission on Ethical Standards "would be empowered to suspend from employment and fine any officer or employee, *including the New York commissioner appointed by the Governor of New York* (who becomes by virtue of his appointment an officer or agent of New Jersey), who is found to have violated any provision of the code." (Emphasis added.) *Id.* at 286, 343 A.2d at 143.

We see no difference between the application of the Ethics Act in this case and the proposed application of the conflict of interests law in the New Jersey case. Either one would result in the unilateral imposition of additional duties on the authority, which is impermissible absent express authorization in the compact or joint legislation by the two creator states.

One of the great strengths of our form of government is our ability to self-examine our own actions. While other governments strive to exaggerate their powers, we are of the mind and practice to confine ourselves to reasonable and lawful limits.

In this case, the lawful limit is imposed by the interstate compact. By entering into such a compact, a state surrenders pro tanto a portion of its own sovereignty. *Delaware River and Bay Authority v. Carello*, 43 Del.Ch. 213, 222 A.2d 794 (Del.Ch.1966) (citing *United States v. Bekins*, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938)). Once this sovereignty has been surrendered, a state may not act unilaterally to regain it. SEC's attempt to exercise jurisdiction over the authority amounts to such a unilateral act.

Accordingly, judgment on the pleadings in favor of the authority is granted.

## ORDER

NOW, this 9th day of January, 1991, the authority's motion for judgment on the pleadings is granted.