Breitel, J.
Petitioners, direct employees,of the Port of New York Authority engaged in the building and mechanical trades, appeal in consolidated proceedings under CPLE article 78, in which they urge the applicability to their employment of New York’s prevailing rate of wage legislation (Labor Law, § 220).
The Industrial Commissioner, by order and determination dated August 4, 1967, dismissed petitioners’ claims that they were receiving less than the prevailing rate of wage, on the ground that the Commissioner lacked jurisdiction. Special Term of Supreme Court annulled the Commissioner’s determination (55 Mise 2d 744). The Appellate Division, however, unanimously reversed, confirmed the Commissioner’s determination, and dismissed the petitions (32 A D 2d 416).
The problem is presented because of the special character of the Port of New York Authority, a public authority created by compact between two States and approved by Congress as required by the United States Constitution (L. 1921, ch. 154, § 1; N. J. S. A., § 32: 1-1 et seq.; 42 U. S. Stat. 174; U. S. Const., art. I, § 10, subd. 3).
The facts and legal issues were succinctly presented at the Appellate Division in the opinion by the late Mr. Presiding Justice Beldook. Two variations must be noted, however, from that opinion.
First, article XIV of the applicable compact between the States of New York and New Jersey reads: “The port authority shall elect from its number a chairman, vice-chairman, and may appoint such officers and employees as it may require for the performance of its duties, and shall fix and determine their qualifications and duties ” (L. 1921, ch. 154, § 1). This language does not expressly empower the' Authority to fix salaries. The fixing of salaries, however, although not a power expressly granted to the Authority, is undoubtedly one of its implied powers. Certainly, as to employees not covered by prevailing wage statutes, there would otherwise be no power anywhere to fix their salaries, a consequence hardly conceivable and not tolerable.
Secondly, a disparate wage scale dependent upon the geographic location of work sites, although occasionally burden *525 some/ is not necessarily “ unworkable.” Presumably, similar problems were involved, and surmounted, in the Authority’s Workmen’s Compensation coverage, since both New York and New Jersey each have independent statutes and agencies (see N. J. S. A. §§ 34:1A-11 to 34:1A-13, 34:15-1 et seq.; Workmen’s Compensation Law, esp. § 140 et seq.).
Consequently, the inapplicability of section 220 of the Labor Law results not from any express exclusion or inherent unworkability, but rather from a general intent, amply reflected in the compact, that the internal operations of the Authority be independent of the direct control of either State acting without the concurrence of the other. Section 220, enacted long before the creation of the Authority, should not be construed to impose a unilateral regulation of the wages of only a fraction of the Authority’s employees, namely, those building and mechanical workers who, it is alleged, work solely on projects within the State of New York.
The distinction between the internal operations and conduct affecting external relations of the Authority is crucial in charting the areas permitting unilateral and requiring bilateral State action. New York and New Jersey have each undoubted power to regulate the external conduct of the Authority, and it may hardly be gainsaid that the Authority, albeit bistate, is subject to New York’s laws involving health and safety, insofar as its activities may externally affect the public (see 1949 Opns. Atty.Gren. 118-121).
Indeed, given sufficient social or economic justification, the lines of external and internal operation may shift, justifying increased regulation as the impact outside the Authority becomes more pronounced. Finally, even as to internal matters, the two States, by bilateral action, may always regulate Authority action, when unilateral action is ineffective or impractical.
Although the Authority’s participation in New York’s Workmen’s Compensation and State Employees’ Retirement systems constitute qualified exceptions to the scheme of internal autonomy, these exceptions are not controlling. Participation in the retirement system is governed by a statutory clause most broad in scope, authorizing participation at the option of any ‘ ‘ public or quasi-public organization ” (Retirement and Social Security *526 Law, § 31, subd. [a]). Although the basis for the application of the Workmen’s Compensation statute is less clear, the administrative and legislative (see L. 1950, eh. 301, § 7) acceptance of the Authority as covered by the statute over many years constitutes, at most, a practical construction by the entities involved of markedly limited precedent or effect. Arguably, workmen’s compensation is not quite as internal a matter as the adjustment of the wage level to prevailing wages.
In the instant matter, however, there is no showing of any sort that section 220 of the Labor Law was ever intended to apply to the Authority, or any justification, by way of practical construction or otherwise, for the unilateral imposition of such regulation on its internal operations.
Accordingly, the order of the Appellate Division should be affirmed without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur. -
Order affirmed.