Patricia BARON, et al., Plaintiff,

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendants.

Nos. 96 Civ. 7007, 96 Civ. 7010, 96 Civ. 7011, 96 Civ. 7012.

United States District Court, S.D. New York.

June 29, 1997.

## ORDER

MOTLEY, District Judge.

Parties in the above captioned matter are notified that, in accordance with the attached

memorandum opinion, defendants' motion for partial summary judgment in regards to plaintiffs' Title VII, ADEA, and state claims is GRANTED

SO ORDERED.

## MEMORANDUM OPINION

Plaintiffs filed separate complaints on September 13, 1996 against the defendants alleging violations of;

(1) 42 U.S.C. § 1983 ("1983") for employment discrimination based on age and sex and for the deprivation of contract, property and due process rights,

(2) Title VII and the Age Discrimination in Employment Act ("ADEA"),

(3) New York Human Rights Law ("HRL")[1] and New Jersey Law Against Discrimination ("LAD")[2] prohibiting employment discrimination based on age,

(4) common law breach of contract.

The court consolidated the cases by order dated December 12, 1996. On February 17, 1997, defendants' filed a motion for partial summary judgment as a matter of law as to all claims asserted against the Commissioners as to the § 1983 claim of deprivation of contract, property and due process rights asserted against all defendants and as to the Title VII and ADEA claims asserted against the supervisors and PA.[3] The court heard arguments on defendants' motion on April 25, 1997.

Because plaintiffs filed and sent a copy of their response papers to defendants the evening before oral arguments, on April 24, 1997 (the day it was due), the court granted defen-

dants an opportunity to submit reply papers to plaintiffs response and scheduled further arguments for June 26, 1997.[4] Because of plaintiffs' numerous causes of actions and the complexity of the facts, the court limited defendants' reply to the Title VII and ADEA claims in an effort to flush out the issues and determine if plaintiffs had a federal question claim.[5] Therefore, this memorandum opinion only addresses the Title VII and ADEA claims and the state law claims that relate to the Title VII and ADEA claims.

## FACTS

Plaintiffs are New York Citizens who were terminated from their respective positions by the defendants on September 15, 1995. Plaintiff Baron is a 54 year old woman who began working for defendant Port Authority in 1966 and was eventually promoted to the position of Managing Director of the Port Authority Gateway American Committee in the Government and Community Affairs Department of Port Authority ("GCAD"). Plaintiff Diaz is a 45 year old Hispanic woman who began working for defendant Port Authority in 1987 as the New York Legislative Representative, a managerial position in GCAD. Plaintiff Toole began working for defendant Port Authority in 1984 and was eventually promoted to the position of Client Manager in GCAD. Plaintiff Ilan is a 51 year old man who began working for defendant Port Authority in 1970 and was eventually promoted to the position of Manager of the Division of Economic Trends in the Port Authority's Office of Economic and Policy Analysis.

---

1. New York State Executive Law § 296.

2. N.J.S.A. 10:5–1 to 10:5–42.

3. Defendants also argued that plaintiffs' common law breach of contract claims should be precluded for failure to exhaust administrative remedies, namely an Article 78 proceeding and that plaintiffs New York and New Jersey statutory claims were inapplicable since Port Authority was a bistate agency that was not subject to the independent laws of either state but was regulated by laws jointly approved by both.

4. On June 10, 1997, plaintiffs filed a motion to recover the costs of personal service upon each of the individual defendants, pursuant to Rule 4(d). Defendants requested an extension to re-

spond to the motion. By order, dated June 26, 1997, the court notified both parties that the court would not consider plaintiffs' motion until a final judgement on the merits of the case had been rendered.

5. Although defendants also sought to dismiss plaintiffs' § 1983 claims with respect to contract and due process rights, the court limited defendants response to addressing Title VII and ADEA. In their response papers, defendants stated that by submitting their limited reply papers they were not waiving their rights to respond to the issues and claims raised by plaintiffs in their response papers.

Defendant Port Authority ("PA") is a bistate public agency created by Compact in 1921 between New York and New Jersey with its principal place of business in New York. Defendant Port Authority's essential governmental functions are to develop, coordinate and operate terminal, transportation and other facilities of commerce in and through New York. PA consists of a board of twelve Commissioners who are defendant Kathleen A. Donovan, Chairperson; defendant Charles Gargano, Vice–Chairperson; and defendants Lewis M. Eisenberg, James G. Hellmuth, Henry F. Henderson, Jr., Robert C. Janiszewski, Peter Kalikow, George D. O'Neill, Alan Philibosian, Melvin L. Schwetzer, Bincent Tese, and Frank J. Wilson, members of the Board. (hereinafter, "Commissioners"). The other defendants hold various positions at the PA and are as follows; George J. Marline, Executive Director; Paul Blanco, Chief Administrative Officer; Richard Codd, Director of GCAD; and Louis J. LaCapra, Director of Human Resources.

Plaintiffs allege that when they interviewed with, were hired by, and worked for PA, they were continuously informed and reassured that PA maintained a policy of staff retention. The policy allegedly gave employees specific rights in the event of a reduction in labor force, including seniority rights, transfer, reassignment and the right to be recalled to work if a position opened that the employee was qualified to work. Plaintiffs allege that they were told that the policy was created to foster a "long standing practice of attempting to provide job security" and to "hire and develop professional and managerial staff with the purpose of creating and maintaining a stable career workforce."

Plaintiffs allege that on September 7, 1995, the Commissioners met and adopted a resolution authorizing department directors to fire managerial employees in the exercise of "sound business and policy discretion of management." The resolution is alleged to be contrary to previous board resolutions and PA policies. Plaintiffs allege that as a result of the resolution, defendants Marlin, Blanco, Codd and LaCapra immediately implemented a massive reduction in force, with defendant Codd terminating several employees, including plaintiffs, on September 15, 1995. Plaintiffs assert that Codd's decision on which employees to fire was based on political favoritism, age, sex and national origin and that he targeted for termination female management-level employees and management level employees over the age of 40 while sparing the jobs of younger, male, or republican management level employees. Plaintiffs allege that positions for which they would have been qualified have been filled by individuals with less seniority.

## DISCUSSION

### I. Standard for Summary Judgment

The court may grant summary judgment if, after viewing the evidence in the light most favorable to the non-movant, the court determines that "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992); *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992) ("all justifiable inferences are to be drawn in the [non-movant's] favor") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). Defendants argue that because plaintiffs filed their Title VII and ADEA charges with the EEOC after the 180 day statutory time limitation, defendants should be granted summary judgment as a matter of law. Defendants also argue that if the Title VII and ADEA claims are deemed timely they should be dismissed against the defendant supervisors and department heads as they are not employers within the meaning of the statute.

### A. Time Limitation of filing an EEOC charge.

■ Strict guidelines govern the proper and timely filing of Title VII and ADEA claims. Timely filing of a charge of discrimination with the EEOC is required before a Title VII or ADEA claim can be brought in federal court. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e). Title VII and ADEA claims must ordinarily be filed with the EEOC within 180 days of the date on which the alleged

unlawful employment practice occurred. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e–5(e)(1). However, if the alleged discrimination occurred in a state with its own antidiscrimination laws and agency to enforce those laws, then the time to file with the EEOC is extended to 300 days. 29 U.S.C. §§ 626(d)(2), 633(b); 42 U.S.C. § 2000e–5(e)(1); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332–1333 (2d Cir.1992); *Ford v. Bernard Fineson Development Center*, 81 F.3d 304, 307 (2d Cir.1996); *Brodsky v. City University of New York*, 56 F.3d 8 (2d Cir.1995). Unlike the ADEA, Title VII has an additional requirement before the 180 day period can be extended to 300 days, which is that the person bringing the charge must initially institute proceedings with the state agency. 42 U.S.C. § 2000e–5(e)(1); *Ford*, 81 F.3d at 307 n. 6. The date the employee received the final notice of termination triggers the date from which the timeliness of the claim is measured, *Shockley v. Vermont State Colleges*, 793 F.2d 478, 481 (1986), and not the date in which the decision takes affect. *Id.*; *Van Zant v. KLM Royal Dutch Airlines*, 870 F.Supp. 572 (S.D.N.Y.1994), *affd.*, 80 F.3d 708, 713 (2d Cir.1996); *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 23 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). The Supreme Court has held that this statutory requirement is analogous to a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982).

According to plaintiffs' complaints, plaintiffs received their notices of termination on September 15, 1995 which means that in order to comply with the general 180 day statutory requirement they would have had to file a discrimination charge with the EEOC on or before March 13, 1996. Plaintiffs Baron, Diaz and Toole did not file a charge with the EEOC until May 1, 1996 while plaintiff Ilan did not file until July 11, 1996, 228 and, in the case of plaintiff Ilan, 289 days after their termination. New York is, however, a state with its own antidiscrimi-

nation laws and agency which serves as the trigger for the statutory extension from 180 days to 300 days. In their summary judgment motion, defendants argue that because Port Authority ("PA") is a bi-state agency, the New York state antidiscrimination agency lacks jurisdiction over PA,[6] thereby making the 300 day extension inapplicable. Since plaintiffs' charges where filed after the 180 period, defendants argue that the Title VII and ADEA claims are time barred as a matter of law. With respect to the Title VII claim, defendants argue that even if the court determines that the New York State Division of Human Rights ("DHR") has jurisdiction over PA, plaintiffs failed to trigger DHR jurisdiction and the 300 day extension by failing to check the boxes on their EEOC charges indicating that they wanted their charges to be "filed with both the EEOC and the State or Local Agency . . ."

Plaintiffs argue that because New York and New Jersey have parallel antidiscrimination laws with state agencies to enforce these laws, PA, whether a bi-state agency or not, is subject to these laws and their enforcement. Plaintiffs maintain that since they filed their charges with the EEOC within the applicable 300 day limitation, both claims are timely. Furthermore, plaintiffs concede that they did not initiate state proceedings but assert that because the EEOC established a workshare agreement with the DHR where the EEOC automatically filed claims it received with the DHR, the prerequisite for extending the 180 day time limitation under Title VII was satisfied.

**1. Bi-state Entities.**

■ Courts have recognized that New York is a state with its own antidiscrimination laws and state agency and have, thereby, held that the 300 day limit applies to persons in New York wishing to file an EEOC charge. *Ford*, 81 F.3d at 307; *Humphrey v. Council of Jewish Federations*, 901 F.Supp. 703, 707 (S.D.N.Y.1995). In this case, however, the problem presented is due

---

**6.** It is on this basis that defendants also argue that plaintiffs New York and New Jersey antidiscrimination law claims should be dismissed since neither state agency has jurisdiction over PA.

Defendants also argue that since plaintiffs are New York residents and that since the actions giving rise to plaintiffs' claims occurred in New York, New Jersey law is inapplicable.

to the special character of defendant Port Authority of New York. PA was created by Compact between two States, New York and New Jersey, and approved by Congress as required by the United States Constitution. N.J. Stat. Ann. § 32:1–1 et seq. (West 1990); N.Y. Unconsol. Laws § 6401 et seq. (McKinney 1979); U.S. Const., art. I, § 10, cl. 1.

The Supreme Court has held that "[b]istate entities ... typically are creations of three discrete sovereigns; two States and the federal government ... and are not subject to the unilateral control of any one of the States that compose the federal system." *Hess v. Port Authority Trans–Hudson,* 513 U.S. 30, 39, 115 S.Ct. 394, 400, 130 L.Ed.2d 245, 257 (1994); *see, Port Authority Trans–Hudson Corporation v. Feeney,* 495 U.S. 299, 314–316, 110 S.Ct. 1868, 1877–1879, 109 L.Ed.2d 264 (1990) (Brennan, J., concurring in part and concurring in judgement). Each state, acting alone, through its governor may block PA measures; however, only by acting together through their legislatures, may both states increase PA powers or add to its responsibilities. *Hess,* 513 U.S. at 44–45, 115 S.Ct. at 402–403, 130 L.Ed.2d at 258; N.J. Stat. Ann. § 31:1–8; N.Y. Unconsol. Laws § 6408.

In accordance with *Hess* and the Compact, New York courts have clearly established that a bi-state agency is bound by the terms of the Compact and any amendments or supplements implemented by legislative action of both states acting jointly and bilaterally. In *Bailey v. Port Authority,* 216 A.D.2d 42, 627 N.Y.S.2d 921 (1st Dept 1995), affirming No. 40149–2, slip op. at 5 (N.Y.Sup.Ct. May 18, 1994), a case directly on point to the issue presented here, the Appellate Division upheld a lower court decision dismissing those portions of a complaint against PA which alleged violations of New York Exec. Law § 296(1)(a). The lower court found that any application of the Human Rights law against PA would be a violation of the Compact and would constitute a unilateral regulation by one state. *see also, Agesen v. Catherwood,* 26 N.Y.2d 521, 525, 311 N.Y.S.2d 886, 260 N.E.2d 525 (1970) ("a general intent, amply reflected in the compact ... [is] that the internal operations of the Authority be independent of the direct control of either State acting without the concurrence of the other").

The court in *Agesen* did not foreclose all unilateral state regulations and noted that New York or New Jersey could take unilateral action to "regulate the *external* conduct of the authority, and [that] it may hardly be gainsaid that the Authority, albeit bistate, is subject to New York's laws involving health and safety, insofar as its activities may externally affect the public." 26 N.Y.2d at 525, 311 N.Y.S.2d 886, 260 N.E.2d 525 (emphasis added). The lower court in *Bailey* noted that a state cannot use language in a statute which states that its purpose is to protect the health and safety of the public but then proceeds to unilaterally regulate the internal operations of PA. The lower court rejected and the Appellate Division affirmed the lower court's rejection of plaintiffs argument that the New York Human Rights law is applicable to PA because it regulated the external conduct of the bistate agency.

Plaintiffs, in this case, argue that the Appellate Division's affirmance of *Bailey* should be disregarded because there was no written decision. Plaintiffs also argue, in their Memorandum of Law in Opposition to Defendants' Partial Motion for Summary Judgment, that New York and New Jersey anti-discrimination laws are applicable to PA because PA published a statement to everyone applying for a position at PA that it conforms and subjects itself to the New York and New Jersey laws prohibiting discrimination based on age. Lastly, plaintiffs claim that because the New York HRL and New Jersey LAD are essentially the same, PA is subject to them and is thereby subject to the state agencies' enforcement of them.

The court finds that there is no merit or little support for any of plaintiffs' arguments. The first argument that the *Bailey* affirmance should be disregarded because there was no written opinion is to no avail since the Appellate Division's order affirming the lower court's decision clearly stated the lower court's decision was "unanimously affirmed for the reasons stated by Cohen, J." 216 A.D.2d 42, 627 N.Y.S.2d 921. Plaintiffs' second argument, that PA had the power to subject itself and did, in fact, subject itself to

New York antidiscrimination law by publishing the statement to potential employees, was asserted without the citation of any supporting case law. As a matter of fact, given the case law, plaintiffs' argument seems very weak. As has been established, the measures (i.e. the publishing of the statement) taken by PA directors and commissioners are not necessarily binding on PA since governors of either state have the authority to overturn any PA measure and since only the state legislatures, working bilaterally, have the authority to enlarge the responsibilities of PA. *Hess*, 513 U.S. at 35–37, 115 S.Ct. at 398–399, 130 L.Ed.2d at 253.

Plaintiffs cite a case to support their last argument that because New York and New Jersey laws against age discrimination are parallel, they are applicable to PA. In *Bunk v. The Port Authority of New York and New Jersey*, 144 N.J. 176, 676 A.2d 118 (1996), the court found that "the corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency *may* be subject to complimentary or parallel state legislation." 144 N.J. at 184, 676 A.2d 118 (emphasis added). However, in New York it has been established that in order for a law to be applicable to PA, the statute must *expressly* state that the "legislation [is] amending a certain portion of the 'Compact' *and* that the new law would take effect upon the enactment into law by New Jersey of legislation having an effect identical to New York's legislation." *Malverty v. Waterfront Commission of New York Harbor*, 71 N.Y.2d 977, 979, 529 N.Y.S.2d 67, 524 N.E.2d 421 (1988) (emphasis added). For New York, "that the two states have evinced the same, or similar, public policy regarding employment opportunities ... by enacting similar 'antidiscrimination' laws is not sufficient under the express terms of the 'Compact,'" *Id.*, to make PA subject to the law of either state. Although the statutes at issue in this case are similar, neither expressly states that they are adding to PA responsibilities nor do they even make mention of the bistate agency.

In this case, the court should keep in mind that when it is called upon to apply state law, the court must be guided by the decisions of the highest court in the state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Despite the contrasting decisions of the lower New York and New Jersey courts on the issue of whether their respective antidiscrimination laws apply to PA, it does seem that the New York position, that the statute does not apply to PA unless it expressly states that it is amending the compact and delegating new responsibilities to PA and is coupled with the adoption of parallel legislation in New Jersey, is more in line with the language of the Compact.[7] Moreover, it appears that there is disagreement in New Jersey between the state courts and the federal courts as to whether New Jersey Law Against Discrimination is applicable to PA. *see, King v. Port Authority of New York and New Jersey*, 909 F.Supp. 938, 945 (D.N.J.1995), affd.—106 F.3d 385—(3rd Cir.1996) (New Jersey LAD is inapplicable to Port Authority).

The absence from the text and legislative history of Human Rights Law and LAD of any mention of PA, in addition to the absence of an express statement by either state legislature that it was amending or supplementing the provisions of the Compact and that the law would take effect upon the enactment of identical legislation in the opposite state, seems to indicate that neither New York nor New Jersey legislatures intended the laws to apply to the internal operations of PA. *see, Malverty*, 71 N.Y.2d at 980, 529 N.Y.S.2d 67, 524 N.E.2d 421. Furthermore, in accordance with *Chevron, U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which held that courts must give substantial weight to statutory interpretation by the agency charged with administering the statute, this court should note that in *Frank v. Port Authority* (Case No. 1a–E–A–80–71767, August, 11, 1980), the DHR declined to hear a Human Rights Law claim brought against PA,

---

**7.** Article VII of the Compact provides: "The Port Authority shall have such additional powers and duties as may hereafter be *delegated to* or *imposed upon* it from time to time by the action of the legislature of either state *concurred in* by the legislature of the other." N.Y.Unconsol. Laws § 6408 (emphasis added).

stating as its reason the fact that DHR did not have jurisdiction over the PA due to PA's bistate status.

Citing an EEOC regulation as their support, defendants, in this matter, argue that since neither state agency has jurisdiction over PA, the 300 day extension is not triggered, thereby making plaintiffs' complaints time barred for failing to file their charges with the EEOC within the 180 day period. The EEOC regulation establishes that:

> A jurisdiction having a FEP agency without subject matter jurisdiction over a charge (e.g., an agency which does not cover sex discrimination or does not cover nonprofit organizations) is equivalent to a jurisdiction having no FEP agency. Charges over which a FEP agency has no subject matter jurisdiction are filed with the Commission upon receipt and are timely filed if received by the Commission within 180 days from the date of the alleged violation. 29 C.F.R. § 1601.13(a)(2).

The Supreme Court has made clear that EEOC's interpretation of Title VII and its terms is afforded great deference. see, *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979); *Chevron*, 467 U.S. at 843–844, 104 S.Ct. at 2781–2783. Therefore, as to the matter before the court, since case law and the Compact strongly suggest that neither the New York nor New Jersey antidiscrimination agencies has jurisdiction over PA, defendants' partial motion for summary judgment to dismiss plaintiffs' Title VII and ADEA claims for failing to file a charge with the EEOC in a timely fashion (i.e. the 180 day period) is granted as a matter of law.[8] Additionally, since New York and New Jersey do not have jurisdiction over PA, this court grants defendants' partial summary judgment motion as to the New York HRL and New Jersey LAD claims.

SO ORDERED.

---

8. In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), in explaining the purpose of the deferral provision of Title VII, the Supreme Court stated, "history identifies only one reason for treating workers in deferral States differently from workers in other States: to give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated. The Statutory play was not designed to give the worker in a deferral State the option of choosing between his state remedy and his federal remedy, nor indeed simply to allow him additional time in which to obtain State relief." 447 U.S. at 821, 100 S.Ct. at 2495. Where, as here, there is no state agency with jurisdiction to hear a discrimination charge or to "redress evil", the 180 day period should apply purpose for applying the deferral provision cannot be met.