**Geraldine S. ROSE, Plaintiff,**

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.**

**No. 96 CIV. 3121(PKL).**

United States District Court, S.D. New York.

July 16, 1998.

Mark B. Stumer & Associates, P.C., New York City (Gordon C. Lai, of counsel), for Plaintiff.

Milton H. Pachter, The Port Authority of New York and New Jersey, New York City (Kathleen M. Collins, of counsel), for Defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Port Authority of New York and New Jersey ("Port Authority") moves for summary judgment in the instant matter. For the reasons stated below, defendant's motion is granted in part and denied in part.

## BACKGROUND

From April of 1990, to September 15, 1995, plaintiff Geraldine S. Rose ("Rose") worked as an Administrative Assistant with the World Trade Institute of the Port Authority.[1] Rose alleges that from June of 1991, to Sep-

tember of 1995, the time of her termination from employment, the Port Authority subjected her to continuous discrimination based on her age, gender, race, and religion. *See* Plaintiff's Rule 56.1 Statement, ¶ 4; *see also* Charge of Discrimination, ¶ 1.[2] Rose also alleges that during her employment, the Port Authority gave preferential treatment to younger employees with less seniority and experience. *See* Plaintiff's Rule 56.1 Statement, ¶ 5. Rose further claims that from 1991 to 1993, she addressed her concerns with respect to age and race discrimination to the Director of Human Resources at the Port Authority, *see* Memorandum to the Director of Human Resources, ¶ 5, and that from 1992 to 1993, the Port Authority excluded her from meetings and otherwise discriminated against her in retaliation for making complaints. *See* Complaint, ¶¶ 13–15.

On September 15, 1995, the Port Authority terminated Rose, citing business reasons. The Port Authority, which was in the midst of a work force reduction at the time of Rose's termination, claims that it based its decision to eliminate Rose's position in the World Trade Institute upon recommendations from external consultants and internal management staff who entertained no discriminatory reasons for their recommendations. *See* Defendant's Rule 56.1 Statement, ¶¶ 12–26.

Rose argues that the Port Authority terminated her in retaliation for her prior complaints about discrimination and because of her age. *See* Complaint, ¶ 19. On January 24, 1996, Rose filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in which she claimed ongoing harassment and retaliation for prior complaints about age discrimination. *See* Charge of Discrimination, ¶¶ 1–4. The EEOC issued a Notice of Suit for her claims under Title VII of the Civil Rights Act of 1964, as amended, Title 42, United States Code ("U.S.C."), Section

---

1. The World Trade Institute is a division of defendant Port Authority.

2. Based on her submissions to date, plaintiff's timeline of alleged discrimination is unclear. In her Charge of Discrimination, she indicates that the Port Authority discriminated against her

from June, 1991, until January, 1994. However, the Complaint filed in this action states 1993 as the latest date of any discriminatory activity, and the Rule 56.1 Statement lists December, 1995, as the most recent date of discrimination.

2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). On April 26, 1996, Rose commenced the instant action by filing a Complaint in this Court, alleging Title VII and ADEA violations as well as violations of the New York Human Rights Law, New York Executive Law § 296 *et seq.* ("HRL") and New York City Administrative Code § 8–107 *et seq.* ("NYCAC"). The Port Authority now moves for summary judgment, arguing that: (1) Rose's claims based on the incidents prior to July 28, 1995, are time barred;[3] (2) Rose failed to prove that the Port Authority acted in retaliation for her prior complaints (under Title VII and the ADEA) or discriminated against Rose because of her age (under the ADEA); (3) Rose's HRL and NYCAC claims do not apply to the Port Authority; (4) Rose's HRL and NYCAC claims are barred due to non-compliance with the jurisdictional prerequisite set forth in the Port Authority's suability statute and; (5) Rose is not entitled to punitive damages.

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, it is this Court's responsibility "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986). Nonetheless, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just,

speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* 477 U.S. at 325, 106 S.Ct. 2548 (internal citations omitted). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* (internal citations omitted). The burden of demonstrating the existence of a genuine issue of material fact then shifts to the non-moving party. *See id.* 477 U.S. at 322–23, 106 S.Ct. 2548. The non-moving party may not rely solely on its pleadings nor on conclusory factual allegations in satisfying this burden. *See Gray v. Darien,* 927 F.2d 69, 74 (2d Cir.1991). The non-moving party instead must offer specific evidence supporting its claim that there exists a genuine issue of material fact. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In demonstrating that the factual issue in dispute is "genuine", the non-moving party must offer evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. ACTS PRIOR TO JULY 28, 1995

### A. *180–day Time Limit*

For complaints based on Title VII and the ADEA, a plaintiff must file a charge of discrimination with the EEOC before commencing an action in federal court. *See* 42 U.S.C. § 2000e–5(e). The charge must be filed within 180 days after the occurrence of the alleged unlawful employment practice, or within 300 days if the plaintiff has initiated proceedings with a state or local agency with authority to institute an action regarding the discriminatory practice. *See* 42 U.S.C. § 2000e–5(e)(1). In the instant matter, although Rose filed a claim with both the EEOC and the New York State Division of Human Rights ("NYSDHR"), she failed to

---

3. July 28, 1995, marks the 180th day prior to the date Rose filed her EEOC charge, January 24, 1996, the significance of which is discussed, *infra.*

initiate proceedings with a state agency with authority to institute an action. The NYSDHR is an agency only of the State of New York, and the Port Authority, a bi-state entity created by both New York and New Jersey, is "not subject to the unilateral control of any one of the States that compose the federal system." *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 42, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994); *see also Baron v. Port Authority of New York and New Jersey,* 968 F.Supp. 924, 928 & 930 n. 8 (S.D.N.Y.1997) (holding that the 180–day, not 300–day, time limit applies to Title VII and ADEA claims brought against the Port Authority as "there is no state agency with jurisdiction to hear a discrimination charge"). Therefore, in cases involving the Port Authority and its liability under Title VII and the ADEA, a plaintiff must file a claim with the EEOC within 180 days of the occurrence of the discriminatory act. However, an exception is allowed for a continuing violation of Title VII and the ADEA.

### B. *Continuing Violation Exception*

■ Although a plaintiff must comply with the 180–day time limit to file a claim with the EEOC, the United States Court of Appeals for the Second Circuit allows an exception in cases of a continuing violation. *See Cornwell v. Robinson,* 23 F.3d 694, 703–04 (2d Cir. 1994); *see also Gomes v. Avco Corp.,* 964 F.2d 1330, 1332–33 (2d Cir.1992). When a plaintiff experiences a continuing violation of Title VII and the ADEA, the last act of discrimination in furtherance of "a continuous practice and policy of discrimination" triggers the commencement of the 180–day time period. *Gomes,* 964 F.2d at 1333 (quoting *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.1985)). In these circumstances, the plaintiff is entitled to challenge "all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell,* 23 F.3d at 704.

However, "the continuing violation doctrine is disfavored in [the Second] Circuit, and will be applied only upon a showing of compelling circumstances." *Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.

1995) (Duffy, J.); *see also Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989); *LaBeach v. Nestle Co.,* 658 F.Supp. 676, 687 (S.D.N.Y.1987). Allegations of discrimination must reflect "a dogged pattern of disparate treatment that persisted unremedied despite [plaintiff's] complaints, over a number of years." *Cable v. New York State Thruway Authority,* 4 F.Supp.2d 120, 125 (N.D.N.Y.1998) (alteration in original) (internal quotation marks omitted). In addition, a "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Lloyd,* 879 F.Supp. at 400 (internal citations omitted).

A continuing violation "may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704. Further, a continuing violation occurs when there is a "consistent pattern of discriminatory ... practices." *Id.* at 704. Therefore:

> The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists ... or discriminatory employment tests .... However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.

*Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir.1993) (internal citations omitted).

■ In view of the above requirements, Rose's claims concerning the alleged discriminatory incidents that took place between June, 1991, and January, 1994, fail to satisfy the continuing violation exception. First, as Rose cites no discriminatory incidents for the time period between January, 1994, and September, 1995 (*see* Charge of Discrimination, ¶ 1), there is no "consistent pattern" of discrimination. All of Rose's alleged incidents occurred between 1991 and 1993, or in September of 1995. Rose offers no explanation for the cessation of alleged discriminatory acts during this 20–month period. The

break in the continuity of the alleged discriminatory practice disfavors the interpretation of a continuing violation. *Cf. Cornwell,* 23 F.3d at 704 (finding a continuing violation *despite* the break in the chain of events because the three-year hiatus in harassment was a direct result of plaintiff's debilitating illness, which defendants caused). Additionally, this unexplained gap in discriminatory pattern clearly negates "a dogged pattern of disparate treatment". *Cable,* 4 F.Supp.2d 120, 125. Moreover, Rose cannot claim that her continued employment with the same employer during the break in the alleged discriminatory acts connects the two sets of incidents. *See Lloyd,* 879 F.Supp. at 400.

■ Second, Rose fails to produce evidence of "specific official policies or mechanisms" amounting to a continuing violation. *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1404 (2d Cir.1993). While a non-moving party facing a summary judgment motion needs only to prove that there is a question of fact to be decided by the jury in order to overcome the motion, the non-movant " 'cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact' ... or defeat the motion through 'mere speculation or conjecture.' " *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (internal citations omitted). Accordingly, the party arguing for a continuing violation exception must demonstrate an issue of fact as to the existence of specific official policies or mechanisms effecting discrimination. *See Butts,* 990 F.2d at 1404; *see also Duck v. New York City Dep't of Transportation,* No. 91 Civ. 7388(RPP), 1994 WL 440666, at *5 (S.D.N.Y. Aug. 12, 1994).

■ In the instant matter, although Rose alleges that similar factors (Rose's age, race, gender, and religion) motivated the discriminatory incidents that occurred in September of 1995, and those that occurred prior to January of 1994, she provides no evidence of a continuous corporate policy or mechanism for effecting discrimination against her. Nor does she present any evidence that the Port Authority maintained a policy or mechanism to discriminate against other employees simi-

larly situated. Her unsubstantiated allegations of continuing discrimination do not rise above the level of "mere speculation or conjecture".

Therefore, given plaintiff's failure to produce evidence that establishes continuity, it is appropriate to exclude incidents that occurred prior to July 28, 1995, from this Court's consideration. The Court dismisses all claims based on incidents that allegedly occurred prior to July 28, 1995. Plaintiff's remaining claims thus all stem from the act of termination that took place in September, 1995.

## III. TITLE VII AND ADEA CLAIMS

### A. *McDonnell Douglas Standard*

Courts examine Title VII retaliation claims under a three-pronged burden allocation test set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* test, as applied to a motion for summary judgment in Title VII retaliation cases, requires:

(1) plaintiff must demonstrate a prima facie case of retaliation,

(2) defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action, and

(3) if the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation.

*Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998); *see also Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 51 (2d Cir.1998). Further, the *McDonnell Douglas* test is equally applicable to cases where a plaintiff makes retaliation claims under the ADEA, *see Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997), and to cases where a plaintiff alleges termination from employment based on age, in violation of the ADEA. *See Renz v. Grey Advertising, Inc.,*

135 F.3d 217, 221 (2d Cir.1997); *see also Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir.1995). Therefore, the Court will address both the retaliation claims under Title VII and the ADEA and the age discrimination claim under the ADEA within the *McDonnell Douglas* framework.

### B. Plaintiff's Prima Facie Case of Retaliation and Age Discrimination and Defendant's Response

The first prong of the *McDonnell Douglas* test imposes similar but slightly different requirements for retaliation and age discrimination claims. To meet the first requirement under the *McDonnell Douglas* test for a retaliation claim, plaintiff must demonstrate that (1) she participated in a protected activity known to the defendant, (2) an adverse employment action was taken against plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action. *See Gallagher*, 139 F.3d at 349 (Title VII retaliation claims); *see also Wanamaker*, 108 F.3d at 465 (ADEA retaliation claims). To meet the first requirement under the *McDonnell Douglas* test for an age discrimination claim, plaintiff must demonstrate that (1) she was within the protected age group, (2) she was terminated from a position for which she was qualified, and (3) the termination occurred under circumstances giving rise to an inference of age discrimination. *See Sutera*, 73 F.3d at 16. Plaintiff's burden in satisfying these prima facie requirements is *de minimis*. *See Donato v. Plainview-Old Bethpage Central School District*, 96 F.3d 623, 634 (2d Cir. 1996) (Title VII retaliation claims); *see also Wanamaker*, 108 F.3d at 465 (ADEA retaliation claims); *Sutera*, 73 F.3d at 16 (ADEA age discrimination claims).

In the instant matter, Rose has satisfied the first prong of the *McDonnell Douglas* test for the retaliation and age discrimination claims. For her retaliation claims, she complained of age and race discrimination to the Director of Human Resources at the Port Authority, which satisfied the requirement of participation in a protected activity under 42 U.S.C. § 2000e–3(a) and 29 U.S.C. § 623(d). The Port Authority terminated Rose at the age of 62, which placed her within the pro-

tected age group under 29 U.S.C. § 631(a) for her ADEA claim. Moreover, she alleges that the Port Authority terminated her in retaliation for her complaints in the past and because of her age, satisfying the requirements of adverse employment action and causal connection between the adverse employment action and the protected activity. Therefore, Rose has established a prima facie case of retaliation and age discrimination under the *McDonnell Douglas* test.

The Port Authority has satisfied the second prong of the *McDonnell Douglas* test. The Port Authority enunciated a legitimate, non-retaliatory and non-discriminatory reason for terminating Rose's employment: work force reduction efforts that aimed to eliminate all of the positions in the World Trade Institute except those with outstanding contractual obligations. Therefore, as both parties have met their respective burden, the Court examines the third prong of the *McDonnell Douglas* test.

### C. Evaluation of Defendant's Proffered Reason within the Second Circuit Framework

The third prong of the *McDonnell Douglas* test requires determination of whether the Port Authority's proffered reason is really a mere pretext for retaliation or age discrimination. *See McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. 1817. Since such determination necessarily requires probing into the intent of the employer, the Second Circuit recently has indicated strongly that evaluation of whether a plaintiff has met the third-prong of the *McDonnell Douglas* test is not a question for a judge but for a jury. *See Gallagher*, 139 F.3d at 350 (holding that "[t]he intent of the employer is a factually disputed matter precluding summary judgment"); *see also Greenway*, 143 F.3d 47, 51–53 (holding that courts should decide the first two prongs of the *McDonnell Douglas* test and that juries should decide the question of pretext). Therefore, once defendant articulates a legitimate reason for the adverse employment action against the plaintiff, " 'the plaintiff then has the full and fair opportunity to demonstrate, through presentation of his own case and through cross-examination of

the defendant's witnesses, that the proffered reason was not the true reason for the employment decision,' but was in fact a pretext for discrimination." *Sutera*, 73 F.3d at 17 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 507–08, 113 S.Ct. 2742); *see also McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817.

In the instant matter, although the Port Authority provided a number of affidavits to support its claim that it did not consider any discriminatory factors in the decision to terminate Rose's employment, whether to believe the Port Authority is a credibility issue, requiring an evaluation by a jury. Therefore, summary judgment is inappropriate on the issue of Rose's remaining retaliation and age discrimination claims.

## IV. HRL [4]

■ As discussed, *supra*, the Port Authority, as a bi-state agency, is not subject to the unilateral control of either of the states acting alone. *See Hess*, 513 U.S. at 42, 115 S.Ct. 394. Only the legislatures of New York and New Jersey, working in concert, may increase the powers and duties of the Port Authority. *See Baron*, 968 F.Supp. at 928–29; *see also* N.Y. Unconsol. Laws § 6408 (McKinney 1998). Moreover, in line with *Hess*, New York courts also have ruled that a bi-state agency may be regulated only by both states acting jointly and bilaterally. *See Agesen v. Catherwood*, 26 N.Y.2d 521, 525, 311 N.Y.S.2d 886, 260 N.E.2d 525 (1970) (holding that the "internal operations of the [Port of New York] Authority [should] be independent of the direct control of either State acting without the concurrence of the other"); *see also Bailey v. Port Authority of New York and New Jersey*, 216 A.D.2d 42, 42, 627 N.Y.S.2d 921, 921 (1st Dep't 1995) (affirming a lower court decision that the New York Human Rights Law cannot apply against the Port Authority, a bi-state agency). Further, "that the two states have evinced the same, or similar, public policy regarding employment opportunities ... by enacting similar 'antidiscrimination' laws is not sufficient," *Malverty v. Waterfront Commission of New York Harbor*, 71 N.Y.2d 977,

980, 529 N.Y.S.2d 67, 524 N.E.2d 421 (1988), to impose the law of either state on a bi-state entity, except in cases where the statutes expressly mention the bi-state entity. *See Baron*, 968 F.Supp. at 929.

In addition, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Frank v. Port Authority* (Case No. 1a–E–A–80–71767, August 11, 1980), the NYSDHR refused to consider a claim brought against the Port Authority, concluding that the NYSDHR did not have jurisdiction over the Port Authority due to the latter's bi-state status. *See Baron*, 968 F.Supp. at 929–30 (discussing *Frank*). As the Port Authority is a bi-state entity and the HRL contains no reference to the Port Authority, plaintiff's claims under the HRL are inapplicable to defendant and are dismissed.

## V. NYCAC

■ The Port Authority, an agency of both New York and New Jersey, is beyond the jurisdiction of New York City Administrative Code. New York courts consistently have ruled that the Port Authority is exempt from municipal regulation. *See, e.g., Santiago v. Port Authority of New York and New Jersey*, 203 A.D.2d 217, 217, 611 N.Y.S.2d 174, 175 (1st Dept.1994); *Love v. Port Authority of New York and New Jersey*, 168 A.D.2d 222, 222, 562 N.Y.S.2d 110, 111 (1st Dept.1990).

Plaintiff argues that defendant is exempt from only those parts of NYCAC that conflict with the latter's statutory mission or purpose, as per *Levy v. City Commission on Human Rights*, 85 N.Y.S.2d 740, 745, 628 N.Y.S.2d 245, 651 N.E.2d 1264 (1995). However, because *Levy* pertains to a state agency, but not a *bi-state* agency, it is unnecessary for this Court to decide whether defendant's work force reduction program is within the letter of defendant's statutory mission or purpose. The principle set forth in *Levy* is limited to a state agency and

---

**4.** Although plaintiff does not dispute defendant's arguments regarding state law claims, jurisdic-

tional prerequisite or punitive damages, the Court nonetheless will examine these issues.

takes no account of the special status conferred upon a bi-state agency such as the Port Authority. Therefore, Plaintiff's reliance on *Levy* is inapposite in the instant matter.

As *Levy* is inapplicable to the instant matter, and *Santiago* and *Love* clearly indicate that the Port Authority is exempt from municipal regulation, the Court dismisses Rose's claims under NYCAC.[5]

## VI. PUNITIVE DAMAGES

█ As a government entity, the Port Authority is immune from punitive damages. In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held that municipalities are not subject to punitive damages. "[T]he officials' malice should not be attributed to the taxpaying citizens of the community .... '[Punitive damages] cannot ... be sanctioned by this court, as they are to be borne by widows, orphans, aged men and women, and strangers ....'" *Id.* 453 U.S. at 261, 101 S.Ct. 2748 (internal citations omitted). The same reasoning applies equally well to a bi-state entity such as the Port Authority. The Court agrees with the majority of courts that have considered the issue and determines that the Port Authority is immune from punitive damages. *See Shifa Services, Inc. v. Port Authority of New York and New Jersey*, No. 96 Civ. 1361(AGS), 1997 WL 563301 at *5 (S.D.N.Y. Sept. 8, 1997) (holding that the Port Authority is immune from punitive damages because "an award of punitive damages might result in increased tolls, fares, and other expenses born by the public generally"); *see also Recreation World, Inc. v. Port Authority of New York and New Jersey*, No. 96 Civ. 5549(LAP), No. 97 Civ. 5029(LAP), 1998 WL 107362 at *12 (S.D.N.Y. March 9, 1998) (reasoning that "it is doubtful that financial damages that can easily be passed on to the public would in fact deter the individuals responsible for the violations"). Therefore, defendant's request to debar plaintiff's punitive damages claim is granted.

5. As the Court dismisses, *supra,* Rose's claims under the HRL and the NYCAC, the Court will not consider whether Rose satisfied the jurisdictional prerequisite for claims under the HRL and the NYCAC.

## CONCLUSION

For the reasons stated above, defendant's motion is HEREBY GRANTED in part and HEREBY DENIED in part. The parties are directed to appear for a pre-trial conference in Courtroom 18B at 500 Pearl Street on September 18, 1998, at 11:00 a.m.

**SO ORDERED.**